USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 27, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
WILLIAM CARDOZA,                              :
                                              :
                        Petitioner,           :
                                              :   08 Civ. 8210 (PAC) (RLE)
           -against-                          :
                                              :   <u>ORDER ADOPTING R&R</u>
DAVID ROCK, *et al.*,                         :
                                              :
                        Respondents.          :
------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      Petitioner William Cardoza ("Cardoza") seeks relief under 28 U.S.C. § 2254, claiming that he was denied the right to effective and conflict-free counsel during the state court trial for his role as a leader in a scheme to import large amounts of cocaine. On September 30, 2008, the Court referred this action to Magistrate Judge Ronald Ellis to evaluate the merits of the petition. (Dkt. 3). On December 30, 2010, Magistrate Judge Ellis issued a Report & Recommendation ("R&R"), recommending that the Court grant the petition in part, deny it in part, and remand the case to New York state court for a recalculation of his sentence in accordance with his R&R. (R&R at 1.)[1] On January 14, 2011, Cardoza filed objections to the R&R, (Dkt. 18); and on January 21, 2011, Respondents filed their objections. (Dkt. 21). For the reasons that follow, the Court ADOPTS the R&R in full, with a slight modification on the remedy.

## BACKGROUND

**I.   Facts**[2]

      Between May and July 1997, the New York City Police Department's Drug Enforcement Task Force ("DETF") was investigating Cardoza for his role in the Juan Carlos Organization, a

---

[1] Although the R&R states its conclusions as such on page 1, it ultimately recommends resentencing to no more than 25 years. The Court declines to accept this recommendation, for the reasons set forth below.

[2] The facts are taken from the R&R, unless otherwise noted.

narcotics trafficking enterprise. On June 6, 1997, DETF seized 102 kilograms of cocaine from a garage in Brooklyn, New York. Cardoza arranged for Russell Carbone ("Carbone") to represent five of the six individuals arrested.

The government then intercepted a phone call linking the recovered cocaine to Cardoza and, ultimately, the Juan Carlos Organization. On July 3, 1997, a second shipment of 135 kilograms of cocaine was seized from a garage in Queens, New York. Cardoza and five others were arrested at the scene; his wife Consuela Perez was arrested later the same day.

Immediately after his arrest, Cardoza retained Carbone to represent him and his wife. At the time, Carbone was still representing Jose Sanchez, an alleged coconspirator arrested during the first seizure. Carbone himself also allegedly had ties to the Juan Carlos Organization. In July 1997, the prosecutor in the case against Sanchez moved to disqualify Carbone due to his possible role in the conspiracy and personal knowledge of facts at issue, which would have made him an unsworn witness. Carbone ultimately withdrew as Sanchez's counsel.

Under New York Criminal Procedure Law, there are four basic types of pleas that a defendant can take: As a matter of right, he may enter a plea of "not guilty" or of "guilty to the entire indictment." N.Y. Crim. Proc. Law § 220.10(1), (2). He may, with the prosecution's consent and the court's permission, enter a plea of "guilty" to one or more of the offenses charged, a lesser included offense, or a combination thereof. Id. § 220.10(4)(a)-(c). Finally, the defendant may plead "not responsible by reason of mental disease or defect." Id. § 220.10(6).

Prior to his trial, the District Attorney's Office decided not to make Cardoza a plea offer, due to his alleged leading role in the drug trafficking organization and the overall strength of the case against him. The Assistant District Attorney ("ADA") informed Carbone that the Office would only consider a plea bargain, if Cardoza cooperated with the prosecution. Cardoza

engaged in three proffer sessions. At the first, Carbone was given a "Standard Proffer Agreement," which Cardoza signed after they privately met.[3] Carbone did not accompany Cardoza for the rest of the session. Cardoza agreed to cooperate in exchange for reducing his wife's sentence and assuring her release on bail.

Carbone also was not present at the second proffer session. Cardoza refused to reveal any information beyond his own role in the Juan Carlos Organization. He was offered a sentence of seventeen years to life for his cooperation, if he pleaded guilty to the top count of the indictment before trial.

At the final proffer session, Cardoza was expected to sign a Plea Cooperation Agreement. The agreement stated that, if Cardoza's cooperation was fruitless, but he was compliant, he would receive a negotiated sentence of seventeen years. If Cardoza's cooperation proved successful, a reduced sentence would be recommended. If Cardoza violated any of the terms of the agreement, he would receive the maximum sentence permitted. Carbone attended this session and urged Cardoza to sign the "ministerial" agreement. When Cardoza refused, negotiations broke down. Carbone did not discuss with Cardoza any other plea options, such as a § 220.10(2) plea to the entire indictment; nor did he approach the trial judge about the possibility of a reduced sentence in exchange for such a plea. Cardoza dismissed Carbone as his attorney.

On September 23, 1997, Lawrence M. Herrmann filed a notice of appearance on behalf of Cardoza. (Id.) On April 3, 1998, Christopher Chan ("Chan") replaced him. (Id.) After withdrawing the offer of 17 years, the prosecution presented the following offer to Chan: "If [petitioner] chooses to plea[d] on the day of trial the People will insist [he] plea[d] to the entire

---

[3] Cardoza claims he never saw or signed this agreement; the signed copy could not be located.

3

indictment and the People's recommendation for sentence will be an appropriate number between 20 and 25 years to life." Cardoza asserts that neither Chan nor the other attorneys ever discussed this option with him. On September 9, 1998, Cardoza fired Chan, and retained Irving Anolik to represent him at trial. (Id.)

On March 31, 1999, following a jury trial in Supreme Court, New York County, Cardoza was convicted of two counts of conspiracy to possess a controlled substance in the second degree, N.Y. Penal Law § 105.15; two counts of first degree criminal possession of a controlled substance, id. § 220.21(1); and two counts of third degree criminal possession of a controlled substance, id. § 220.16(1). He was sentenced to an aggregate indeterminate prison term of forty years to life.[4]

On direct appeal, Cardoza argued ineffective assistance of counsel by Carbone based on his alleged conflicts of interest. On October 27, 2005, the Appellate Division unanimously affirmed his conviction. People v. Cardoza, 803 N.Y.S.2d 65 (N.Y. App. Div. 1st Dep't 2006). On February 23, 2006, the Court of Appeals denied leave to appeal. People v. Cardoza, 845 N.E.2d 1281 (N.Y. 2006). Cardoza then filed a motion to vacate judgment under § 440.10—asserting both grounds for ineffective assistance raised here—which the court denied on October 4, 2007. The Appellate Division affirmed this denial on February 21, 2008.

On September 24, 2008, Cardoza filed this habeas petition. He argues that counsel was ineffective in failing to inform him that he could plead guilty to the whole indictment. He also contends that Carbone had an impermissible conflict, arising from his representation of co-conspirators and his own alleged criminal conduct.

---

[4] On September 22, 2006, Cardoza was resentenced on his two A-1 felony convictions to two consecutive 15 year determinate prison terms. His indeterminate sentence of an eight to twenty-five year, consecutive term for his class B felonies was not disturbed. His full sentence is now 30 to 50 years.

## II. R&R

On December 30, 2010, Magistrate Judge Ellis issued an R&R, recommending that the Court grant Cardoza's petition in part, deny it in part, and remand the case to state court for resentencing to no more than twenty-five years.

### a. Failure to Convey § 220.10(2) Plea Option

Magistrate Judge Ellis found that Cardoza's attorneys failed to inform him of the available plea options, specifically pleading guilty to the whole indictment under § 220.10(2). (R&R at 15.) He concluded that the state court incorrectly analyzed the plea and cooperation offer and the § 220.10(2) plea option by failing to draw a distinction between what he found were two separate and distinct plea options. (Id. at 17.) As a result, Magistrate Judge Ellis determined that the conclusion that the attorneys' conduct was objectively reasonable was itself unreasonable.

Magistrate Judge Ellis also found that, but for the unprofessional errors made by the attorneys, the result of the proceeding would have been different, thereby prejudicing petitioner in that he was not provided complete and accurate information with which to make an informed decision to plead or go to trial. (R&R at 18.) Additionally, Magistrate Judge Ellis found the large disparity between the sentence received and the one that would have been recommended to be evidence of prejudice. (Id. at 19.)

### b. Conflict of Interest

Magistrate Judge Ellis concluded that Cardoza failed to establish the existence of a per se violation. The conflict of interest was based on speculative evidence of Carbone's involvement in the Juan Carlos Organization, which was insufficient to support a per se conflict. (Id. at 23.)

Magistrate Judge Ellis also found that there was no actual conflict of interest because Cardoza failed to establish any divergence between Carbone's interests and his own. (Id. at 24.) The claim that Carbone had a personal interest in protecting his own criminal conduct was belied by the fact that he arranged a plea agreement contingent on Cardoza's willingness to give the government information about the criminal organization. (Id.)

Additionally, Magistrate Judge Ellis rejected the claim that Carbone's simultaneous representation of Cardoza's wife and Sanchez created an actual conflict because there was no evidence that Carbone made choices that advanced his other clients' interests over those of Cardoza. (Id. at 25.)

### III.   Respondents' Objections

Respondents argue that the R&R mistakenly treats the proposed sentencing recommendation for a plea to the entire indictment as if it operated like a negotiated plea. When a prosecutor makes a recommendation upon a defendant's negotiated plea to a lesser offense, the consent of both the prosecutor and the court are required. If a defendant pleads to the entire indictment, however, he submits himself to the trial court's sentencing discretion. The sentencing court may impose any prison sentence up to the legal maximum, regardless of the recommendation. (Resp. Obj. at 6-9.)

Respondents also argue that the R&R applies the wrong standard for habeas review—the question is not whether the state court's determination was correct, but whether it was unreasonable. (Id. at 10, 11.) Respondents note that when Justice Bonnie Wittner, who presided over the pretrial plea negotiations and trial, denied Cardoza's § 440 motion, she found that his "self-serving" affidavits were "incredible and contradicted by sworn statements." (Id. at 12.) Finally, Respondents assert that Petitioner has not submitted any affidavits from his three former

attorneys, confirming that they failed to advise him of this option; and that the R&R bases its recommendation on hearsay statements, made over ten years after the case and rejected by the state court. (Id.)

Furthermore, Respondents argue that Cardoza has failed to demonstrate a reasonable probability that, but for counsels' errors, he actually would have pleaded guilty. (Id. at 16.) They contend that Magistrate Judge Ellis considered only those factors supporting Cardoza's claim and ignored the factors indicating that he had no interest in pleading guilty. (Id.) In particular, Respondents point to Cardoza's insistence on his innocence at sentencing as evidence that he never would have pleaded guilty to the whole indictment. (Id. at 17.)

Finally, Respondents argue that the remedy proposed by Magistrate Judge Ellis is inappropriate under § 220.10(2), because it usurps the state sentencing court's discretion by directing the court to resentence Cardoza to no more than twenty-five years. (Id. at 18-19.)

### IV. Petitioner's Objections to Magistrate Judge Ellis's R&R

Cardoza objects to Magistrate Judge Ellis's determination that Carbone's representation did not create a per se conflict of interest. He offers witness testimony and wiretap evidence to demonstrate Carbone's direct involvement in Petitioner's criminal business. (Pet'r Obj. at 5.)

Cardoza also argues that Magistrate Judge Ellis incorrectly rejected his argument that, because Carbone's primary interest was in ending the prosecution to save himself from trouble, Carbone pursued a plea deal regardless of the consequences for his client. (Id. at 8.) Cardoza maintains that his interest in protecting his wife was not paramount to his interest in his own liberty, and if counsel had been acting solely on Cardoza's behalf, Cardoza would not have given inculpatory statements in exchange for his wife's, as opposed to his own, freedom. (Id.)

## DISCUSSION

### I. Applicable Legal Standards

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  When a timely objection has been made to the recommendations of the magistrate judge, the court reviews the contested issues de novo. Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998).  The Court, however, "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a strict standard for habeas review of state convictions, providing that the writ shall not be granted unless the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "(2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The source of clearly established law is restricted to Supreme Court jurisprudence, Williams v. Taylor, 529 U.S. 362, 412 (2000), and it is the petitioner's burden to demonstrate that the state court applied this law in an unreasonable manner. Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009).  The Supreme Court has clarified that "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, 529 U.S. at 409.  In evaluating the state court's decision for reasonableness, this Court must apply a presumption of correctness to factual determinations.  Petitioner bears the burden of rebutting that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Even if the state court decision meets one of

the 28 U.S.C. § 2254(d) conditions, the petitioner cannot obtain relief "unless application of a correct interpretation of that [clearly established Supreme Court] decision leads to the conclusion that his rights were violated." Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir. 2008) (internal quotations omitted).

Strickland v. Washington, 466 U.S. 668 (1984), defined a two-part test for ineffective assistance of counsel claims: First, the defendant must show that counsel's performance was deficient, as judged by an objective standard of professional reasonableness. Id. at 687. The Court is highly deferential to counsel's performance; any errors must be "so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial." Id. at 689. Second, the defendant must show prejudice. In other words, there must be a reasonable probability that, but for the counsel's deficiency, the result of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

For purposes of AEDPA, the Strickland standard is the relevant "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Aparicio v. Artuz, 269 F.3d 78, 95 & n.8 (2d Cir. 2001). Although the petitioner is not required to show that his particular theory of ineffective assistance of counsel is also "clearly established," he must do more than show that he would have satisfied the Strickland test, if his claim were being analyzed in the first instance. Rather, he must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner. In other words, this Court's review of the state court's decision is "doubly deferential," taking "a highly deferential

look at counsel's performance through the deferential lens of § 2254(d). Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (internal quotations and citations omitted).

**II.     Ineffective Assistance of Counsel: Failure to Convey Plea**

The two-part Strickland test applies to counsel's duty to advise his client whether to plead guilty. Hill v. Lockhart, 474 U.S. 52, 57 (1985). Defense counsel is responsible for advising the accused of developments in a case, so that he can make an informed decision. See id. This obligation includes explaining the available plea options, id., e.g., proposals made by the prosecutor and the § 220.10(2) plea option.

There is sufficient evidence of prejudice when (1) the petitioner lacked accurate information to decide if he should enter a plea or go to trial; (2) he has stated that he would have pled if he had access to this information; and (3) there is a significant disparity between the actual maximum sentencing exposure and the sentencing exposure represented by petitioner's attorney. See United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998); see also Aeid v. Bennett, 296 F.3d 58, 63 (2d Cir. 2002) (holding that petitioner must show that, but for his attorneys' omissions, the prosecutor would have offered him a more favorable sentence, and he would have accepted that offer). Here, there is some concern about the sentencing judge's discretion to follow or disregard the proposed sentencing recommendation. Absolute certitude about the sentence Cardoza would have received had he pled to the entire indictment, however, is not necessary to establish prejudice; rather, just a reasonable probability that the sentence would have been more favorable. Cullen v. United States, 194 F.3d 401, 403, 404-405 (2d Cir. 1999).

The state court rejected Cardoza's assertions that his attorneys never informed him of his plea options and that, even if they had failed to do so, there was no prejudice because his

behavior suggested that he never would have pleaded guilty. The entire discussion, however, focuses on the negotiated plea offer of 17 years, which was conditioned on Cardoza's cooperation.[5] The state court never discusses the § 220.10(2) plea—the only remaining option for Cardoza since he refused to cooperate and it did not require him to do so. The state court's rejection of these grounds for ineffective assistance of counsel, therefore, was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). It was unreasonable insofar as it neglected to analyze the actual basis of Cardoza's claim, and, in doing so, ignored the significance of the condition of cooperation on Cardoza's reticence to plead guilty.

As stated by Magistrate Judge Ellis, each of Cardoza's attorney's independently failed to inform him of the § 220.10(2) plea option. (Id.) Carbone did not explore Cardoza's § 220.10(2) option to plead to the entire indictment. (Id. at 15.) Herrman discussed alternatives with Cardoza but failed to convey the § 220.10(2) plea option because it was not in his practice to explore a § 220.10(2) plea option in state cases. (Id.) Chan discussed the proffered agreement with Cardoza, but not the § 220.10(2) plea option. (Id. at 16.) Lastly, Anolik stated he did not recall discussing the § 220.10(2) plea option with Cardoza. (Id.) Cardoza was not informed of the difference between going to trial, facing forty years to life, and pleading to the entire indictment, facing a recommended sentence of twenty to twenty-five years. "The failure to give *any* advice [on this plea option] was entirely contrary to the minimum professional norms of practice." Young v. Zon, No. 04-CV-00363(VEB), 2011 WL 691631, at *17 (W.D.N.Y. 2011) (emphasis in original).

---

[5] Respondents assert that the state court did not confuse the two plea options, (Resp. Obj. 4-5), but provide no explanation for this assertion.

Magistrate Judge Ellis also correctly found Cardoza was prejudiced because he did not have complete and accurate information which to make an informed decision whether to go to trial or to plead. "[A] significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). The disparity between the received sentence and the sentence the prosecution was prepared to recommend is clear evidence in support of that position.[6] As noted, the ADA informed Chan that their sentencing recommendation would be in the range of 20-25 years to life. (Id. at 19.) As Cardoza has sworn, he would have accepted a deal of this nature. Any uncertainty as to how the state court would have used its discretion can be addressed in choosing the appropriate remedy.

A client is unlikely to know about the reduced sentencing recommendation attached to the § 220.10(2) plea option, unless his attorneys inform him; by failing to do so, they deprived him of an essential legal protection. Particularly when the prosecution has made plea negotiations conditional on cooperation, there is a danger that a defendant will not be aware that he has another—unconditional—option.

### III.   Ineffective Assistance of Counsel: Conflict of Interest

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel, "unhindered by a conflict of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981). Courts recognize two types of conflicts: actual conflicts and per se conflicts. Courts are reluctant

---

[6] The Court rejects Respondents' argument that the recommended sentence of 20-25 years to life should be compared to the current sentence of 30-50 years, as opposed to the initial sentence of 40 years to life. The inquiry deals with the sentence Cardoza faced at the time he was evaluating his options and decided to go to trial. Additionally, there is a significant disparity between a lower limit of 20-25, and a lower limit of 40, even if the upper limit remains life. Cardoza was clearly concerned with minimizing his sentence, so there is a reasonable probability that he would have chosen to at least have the opportunity of a sentence below 40 years.

to find a per se violation, and reserve such a determination for extreme or egregious circumstances.

An actual conflict of interest exists when "the attorney's and defendant's interests diverge with respect to a material fact, legal issue, or to a course of action." United States v. Schwarz, 283 F.3d 76, 91 (2d Cir. 2002). In the case of joint or multiple representations, an actual conflict of interest arises when the attorney's loyalty has become compromised.

Cardoza argues that (1) Carbone had a personal interest in protecting his own criminal conduct; and (2) Carbone's simultaneous representation of Cardoza's wife and coconspirator, Jose Sanchez, created an actual conflict of interest. Cardoza provides minimal and speculative evidence of Carbone's alleged criminal conduct, insufficient to invoke a per se ruling. His second asserted conflict is contradicted by the evidence that Carbone himself arranged a plea agreement contingent on Cardoza's willingness to give the government information about the criminal organization. Additionally, the state court reasonably concluded that any action by Carbone to pursue a plea option was in furtherance of Cardoza's own expressed interest in his wife's release. Accordingly, Cardoza falls short of proving that Carbone's loyalty was compromised.

## IV.    Remedy Available

Magistrate Judge Ellis recommends remanding the case to New York state court, and permitting Cardoza to plead guilty to the whole indictment in exchange for a minimum sentence of no more than twenty-five years. As Respondents correctly argue, this would usurp the discretion of the state sentencing court. It is a sufficient remedy to restore the petitioner to the pretrial plea decision stage of the proceedings. The matter should be remanded to state court, where petitioner would be allowed to plead guilty plea to the entire indictment, and be

13

resentenced in the state sentencing court's discretion. The Court wishes to make clear that the sentencing court is not bound by the district attorney's sentencing recommendation.

## CONCLUSION

For the forgoing reasons, the Court adopts the Report and Recommendation, as modified above. Cardoza's petition is DENIED on the claim of ineffective assistance of counsel with respect to conflict of interest. His petition is GRANTED on the claim of ineffective assistance of counsel with respect to the failure to convey the option to plead to the entire indictment. Upon remand, should Cardoza plead guilty to the entire indictment, he is to be resentenced according to the discretion of the sentencing court.

The Court grants a certificate of appealability for the claim on which habeas relief is denied, i.e., ineffective assistance of counsel based on alleged conflicts of interest. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The certificate of appealability . . . shall indicate which specific issue or issues satisfy th[is] showing . . . ." Id. at § 2253(c)(3). That issue is whether the state court decision that Cardoza's attorney's alleged conflicts of interest—due to his own possible criminal conduct and representation of two coconspirators—did not make him ineffective was an unreasonable application of Strickland. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Clerk of Court is directed to close this case.

Dated: New York, New York
September 27, 2011

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

14

Copies Mailed To:

Svetlana M. Kornfeind
The Legal Aid Society
199 Water Street
New York, NY 10038

Ashlyn Dannelly
New York State Attorney General's Office
120 Broadway, 22nd Floor
New York, NY 10271